UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CATHY YONKO,**

**Plaintiff,**

**v.** **Case No: 6:25-cv-1165-DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**
_______________________________________/

**MEMORANDUM AND OPINON**

**THIS CAUSE** is before the Court on Claimant's appeal of an administrative decision denying Claimant's application for disability benefits. In a decision dated November 19, 2024, the Administrative Law Judge (ALJ) found that Claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2019, the alleged onset date, through December 31, 2023, the date last insured. R. 31.

Having considered the parties' briefing and being otherwise fully advised, the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **REVERSED** and **REMANDED**.

## I. Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Claimant filed the application after March 27, 2017, so the revised regulations apply in this action.

## II. Discussion

Claimant raises one issue on appeal related to the ALJ's determination that there were jobs that existed in significant numbers in the national economy that Claimant could have performed. To determine whether a claimant is disabled, the Social Security Regulations have a five-step, sequential evaluation process. *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)). An ALJ must assess whether a claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listed impairments; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given residual functional capacity (RFC), age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 416.920(a)(4)). Although a claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner carries that burden, a claimant must then prove he cannot engage in the work identified by the Commissioner. *Id.*

In step-five, the ALJ provided the following statement:

> To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of the following representative unskilled occupations: cleaner, housekeeping, with 190,475 jobs in the national economy, marker, with 167,105 jobs in the national economy, and small products assembler, with 28,736 jobs in the national economy. Dictionary of Occupational Titles, Volumes I and II, Fourth Edition, Revised 1991, Codes 323.687-014, 209.587-034, and 739.687-030, respectively.
>
> Pursuant to Social Security Ruling 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. The vocational expert testified that any conflicts between his testimony and the information contained in the Dictionary of Occupational Titles was based on his education, experience, and training.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

R. 30.

And with respect to the testimony of the Vocational Expert (VE) the transcript reflects the following exchange:

> ALJ: Have you had the opportunity to review the claimant's work history? She did work for a solid ten years, but not within the past five years. Assume an individual between the ages of 40 and 46 with an elementary school education, early elementary, and is unable to read or write and no past relevant work with a residual functional capacity for light work as defined in the Social Security Regulations who can frequently climb ramps and stairs, stoop, kneel, crouch and crawl, occasionally climb ladders, ropes or scaffolds. Such an individual must avoid concentrated exposure to extreme cold, wetness and hazards. Such an individual is able to understand, remember and carry out simple instructions, able to occasionally interact with the public, coworkers and supervisors, able to concentrate and persist for simple tasks and able to adapt to changes in a simple work setting. Could such an individual perform any work in the national economy?

> VE: Yes, one moment. Cleaner, housekeeper, 323.687-014, light with an SVP-2, 190,475 nationally. Marker, 209.587-034, light with an SVP-2, 167,105 nationally. Small products assembler, 739.687-030, light with an SVP-2, 28 ,736 nationally.
>
> ***
>
> ALJ: Is your testimony consistent with the DOT?
>
> VE: Any matters that are not addressed, I based that on my education and experience and training.

R. 55-57.

Claimant argues that at step five of the sequential evaluation, "the ALJ failed to resolve the apparent conflicts between the VE's testimony and the DOT, in violation of Agency policy and case law precedent." Doc. 15 at 4. Indeed, the Eleventh Circuit in *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018) held that "SSR 00-4p imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT."

A conflict is apparent "when it is 'reasonably ascertainable or evident,' i.e., when it is 'seeming[ly] real or true, but not necessarily so.'" *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1314 (11thCir. 2021) (quoting *Washington*, 906 F.3d at 1362). "At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Washington*, 906 F.3d at 1365. "Apparent" in this context is "taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT." *Id*. at 1366. "The ALJ's duty to take notice of and to resolve apparent inconsistencies between the DOT and VE testimony exists both during and after the hearing and does not depend on whether they are raised by a party." *Cannon v. Kijakazi*, 2023 WL 2706735, at * 4 (M.D. Fla. Mar. 30, 2023) (citing *Washington*, 906 F.3d at 1363). "[T]he

ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it." *Washington*, 906 F.3d at 1362. "The failure to properly discharge this duty means that the ALJ's decision is not supported by substantial evidence." *Id*.

Here, Claimant contends that the ALJ found that she is unable to read and write, and this finding created an apparent conflict between the jobs the VE identified and the information in the DOT. *Id*. at 7. Claimant states that the three jobs the VE identified required the ability to: read at a rate of 95-120 words per minute; print simple sentences containing a subject, verb, and object; and recognize the meaning of 2,500 words. *Id*. at 7 to 8, 10 to 11. Claimant represents that all three jobs are on a "language level 1" classification and require at least some reading and writing, which is inconsistent with the ALJ's illiteracy finding. *Id*. at 8. Claimant argues that the DOT's job descriptions demonstrate that reading is embedded in all three positions identified by the VE. Doc. 22 at 2.

Namely, Claimant states that the marker job requires comparing merchandise codes to invoices and tagging items with identifying information and includes tasks involving reading alphanumeric materials; the housekeeper cleaner job requires following cleaning procedures and complying with written safety instructions, which presuppose reading labels and warnings; and the small products assembler job requires following work orders and part specifications including tasks that involve reading written instructions or diagrams. *Id*. at 2 to 3 (citing DOT 209.587-034; DOT 323.687-014; DOT 739.687-030).

The Commissioner does not dispute that the ALJ found Claimant could not read or write[1] or that she posed to the VE a hypothetical with "unable to read or write" as a factor. *See* Doc. 21 at 6-7, 21. Nor does the Commissioner dispute that the jobs at issue had a "Reading Level 1" for

[1] The ALJ found that "[t]he claimant is illiterate (20 C.F.R. 404.1564)." R. 29.

the language level. *See id*. at 7-8. Regardless, the Commissioner states that "Reading Level 1" is the lowest level and "[Claimant] suggests that illiteracy precludes an ability to perform work at Reading Level 1 given its definition. . . which would mean there are no jobs that [Claimant] could perform." *Id*. at 7. The Commissioner argues that since there is no "Reading Level zero," Claimant's "position is inconsistent with the agency's regulations that find literacy does not have a significant impact on the number of unskilled, light jobs for younger individuals." *Id*.

The Court, however, does not read Claimant's argument to be so limited.[2] Instead, Claimant clearly argues that the ALJ failed to resolve the apparent conflict between the VE's testimony and the DOT's reading and writing level for each job. She does not state that the ALJ could never resolve the apparent conflict because of the illiteracy but that the ALJ was required to identify the apparent conflict, ask about it, and provide an explanation based on *Washington*. The Court agrees that the ALJ failed to do so.

---

[2] It seems that Claimant makes clear that this is not her argument in the Reply. Claimant states:

> The Commissioner alternatively argues that "*Plaintiff suggests that illiteracy precludes an ability to perform work at Reading Level 1 giving its definition – reading at 95-120 words per minute, printing a simple sentence, and recognizing the meaning of 2,500 words – which would mean that there are no jobs that Plaintiff could perform*." (*See* Defendant's Memorandum in Support of the Commissioner's Decision, at 7). This same argument, however, has been repeatedly rejected by the Courts. *See Burton v. Astrue*, 2012 WL 1184425, at *6 (D. Me. Apr. 6, 2012) ("Recognizing the existence of this particular [illiterate and reading/writing] conflict is hardly tantamount to decreeing illiterate people per se disabled. Rather, SSR 00-4p simple requires a reasonable explanation before an ALJ can rely on vocational testimony at odds with a DOT job description."); *see Oeur v. Astrue*, 2012 WL 234645, at *6 (C.D. Cal. Jan. 24, 2012) ((rejecting argument by commissioner that acceptance of claimant's argument that administrative law judge had erred in not identifying and resolving conflict between illiteracy and DOT reading requirements "necessarily leads to the conclusion that all illiterate claimants are disabled").

Doc. 22 at 6 n. 10.

In support of Claimant's request for relief, Claimant relies on a case from this District that is instructive. In *Frazier v. Kijakazi*, 2022 WL 950649 (M.D. Fla. Mar. 30, 2022), the ALJ also relied on a VE's testimony regarding jobs that a claimant could perform that were found in the national economy. The claimant's attorney asked the VE if any of the asserted jobs—small parts assembler, hand packager, and electronics worker—would require any kind of skill in reading and writing. *Id.* at *3. The VE opined that the jobs could be performed by an illiterate person. *Id.* According to the court, at step-five of the analysis, the ALJ relied upon the VE's opinion and "stated in conclusory fashion that '[p]ursuant to SSR 00-4p, . . . the [VE's] testimony [was] consistent with the information contained in the. . . DOT.'" *Id.* (citing the record).

As in the instant case, the claimant in *Frazier* argued that there was a discrepancy between the VE's testimony and the DOT because the jobs had language levels that imposed requirements to read, write, and speak. *Id.* The claimant argued that at least on the face of the jobs, the claimant could not satisfy the criteria because of illiteracy. *Id.* The court found that "[t]here is little question here that there was at least an apparent conflict between the VE's testimony about the jobs the [claimant] could perform despite his illiteracy and the language requirements of those occupations set forth in the DOT." *Id.* at *4. The court stated that the discrepancy was also made apparent by counsel's questions to the VE regarding whether the jobs required reading and writing. *Id.*

The court stated that "[a]though the DOT specifies that each job necessitates some level of reading and writing ability, the VE tacitly acknowledged and the ALJ expressly determined that the [claimant] was unable to do either." *Id.* (citing *Torres v. Saul*, 2021 WL 280066, at *4 (M.D. Pa. Jan. 4, 2021) ("[G]iven that the ALJ determined that [the claimant] is illiterate and the VE testified that [the claimant] can perform the jobs which, according to the DOT, require a minimum level of proficiency in English, there is a conflict."). The court determined that since there was an

apparent inconsistency between the VE's testimony and the DOT, the ALJ was required to reasonably explain the discrepancy and detail in the decision how it was resolved, which the ALJ failed to do. *Id*.

Notably, the court stated that the "not only did the ALJ fail to provide a 'reasonable explanation' for the discrepancy and describe how he disposed of that conflict, he did not even mention the inconsistency at all. As a result, reversal and remand is warranted." *Id*. (citing *Matthews v. Berryhill*, 2018 WL 735413, at *4-5 (D. S.C. Jan. 23, 2018) (reversing and remanding a case where a claimant was functionally illiterate, the jobs identified by the VE and cited by the ALJ required some level of literacy, and ALJ failed to explain why he deviated from the DOT's requirements); *Burton v. Astrue*, 2012 WL 1184425, at *5 (D. Me. Apr. 6, 2012) (directing that the case be reversed and remanded where "[t]he [claimant]'s reading capacity, as found by the [ALJ] and conveyed to the [VE], clearly conflicts with the reading ability that the DOT indicates is necessary to perform the jobs at issue")).

And here, although the ALJ posited that the hypothetical person could not read or write, the VE testified that this individual could perform the three DOT jobs with a "Reading Level 1." Again, a conflict is "apparent to an ALJ who has ready access to and a close familiarity with the DOT." *Washington*, 906 F.3d at 1366. And despite the apparent conflict, the ALJ failed to identify it and provide the reasonable explanation for the resolution at the hearing or in the decision. The statement in the decision that the ALJ determined that the VE's testimony is consistent with the information contained in the DOT is not enough. *See Charles F. v. King*, 2025 WL 383802, at *5 (M.D. Ala. Feb. 4, 2025) (finding that the ALJ's statement that "the VE's testimony is consistent

with the information in the [DOT]. . . falls short of the ALJ's duty to explain her decision by failing to acknowledge and resolve the conflict set forth above").[3]

Also, the ALJ's statement that "the [VE] testified that any conflicts between his testimony and the information contained in the Dictionary of Occupational Titles was based on his education, experience, and training," simply does not satisfy the ALJ's duty under *Washington*. As an initial matter, the VE did not say that "any conflicts" were based on his education, experience, and training. Instead, in response to the ALJ's inquiry as to whether the testimony was consistent with the DOT, the VE responded that "any matters that are not addressed, [he] based that on [his] education and experience and training." R. 56. The ALJ apparently assumed that "any matters" means "any conflicts," but the Court will not make the same assumption.

But in any event, the ALJ's reference to the VE's "any matters" statement was not an identification of the apparent conflict at hand—based on the illiteracy issue—nor was it an adequate explanation as to how that apparent conflict was resolved. *See Frazier*, 2022 WL 950649, at *4 ("Contrary to the Commissioner's assertion. . ., the fact that the VE claimed—without any explanation—that an illiterate individual could engage in the three identified jobs did not absolve the ALJ of his obligation to reconcile this discrepancy. . .. Instead, the duty falls to the ALJ under SSR 00-4p to set forth an adequate justification for relying on the VE's testimony when it is at odds with the DOT."); *Hernandez v. Comm'r of Soc. Sec.*, (M.D. Fla. Aug. 16, 2021) ("If Claimant is illiterate as the ALJ stated and without the ability to read and write in general, then the

[3] Also, since the ALJ found that the VE's testimony was consistent with the information contained in the DOT, it stands to reason that the ALJ must have had knowledge of the DOT information and the reading level associated with the jobs and compared it to the VE's testimony. Clearly, there is at least an apparent conflict, which the ALJ was required to identify and provide a reasonable explanation of how it was resolved.

VE's testimony does not account for the difference between the DOT and the ALJ's determination that Claimant can perform the work despite his illiteracy.").

Finally, the Court finds that the ALJ's error was not harmless. Despite the DOT's requirements and the ALJ's inclusion of the inability to read or write limitation for the hypothetical person the ALJ posited for the VE, the VE found that Claimant could perform the three jobs. The ALJ based the disability finding on the VE's testimony and, therefore, the error was not harmless. *See Frazier*, 2022 WL 950649, at *5 (finding that to the extent the harmless error analysis applies, "it does not save the ALJ's determination" since the ALJ did not acknowledge the conflict, explain how it was resolved, and the "only evidence in the record arguably even alluding to the impact of the [claimant's] illiteracy on his ability to perform the three jobs at issue is the VE's conclusory statement that it would have no effect. Because there is insufficient evidence in the record demonstrating that the ALJ discharged his duty to identify, explain, and resolve this discrepancy, this failure cannot be deemed harmless.") (citation omitted).

**III. Conclusion**

The Court finds that it cannot meaningfully review the ALJ's decision because the ALJ did not identify the conflict that was at least apparent and did not provide a reasonable explanation of its resolution in accordance with *Washington*. *See Frazier*, 2022 WL 950649, at *5 (finding that the court could not conduct a meaningful review because the ALJ did not "reference at the hearing or in his decision that there was a conflict between the VE's testimony and the DOT, much less provide a sufficient rational of how he resolved that discrepancy") (citing *Hernandez*, 2021 WL 3617405, at *4 (reversing and remanding the Commissioner's decision where the court could not engage in a meaningful review of the ALJ's determination that the claimant could perform the specified work despite his illiteracy); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("Here

the ALJ, although noting [the claimant]'s [illiteracy] in both his findings of fact and hypothetical to the [VE], failed to explain how this limitation related to his finding that [the claimant] could perform her past relevant work as generally performed.")).

For the stated reasons, it is **ORDERED** that:

1. the final decision of the Commissioner is **REVERSED** and **REMANDED**; and
2. the Clerk is directed to enter judgment for Claimant and against the Commissioner, terminate any pending motions, and close the case.

**ORDERED** in Orlando, Florida on July 22, 2026.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties